IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re : | Chapter 11 |
| : | (Jointly Administered) |
| QUALTEQ, INC., : | |
| d/b/a VCT NEW JERSEY, INC., et al.[1] : | Case No. 11-12572 (KJC) |
| : | |
| Debtors : | Related D.I. 106, 629, 682 |

CERTIFIED:
AS A TRUE COPY:
ATTEST:
DAVID D. BIRD, CLERK
U.S. BANKRUPTCY COURT
BY: _____ 2/17/12
      Deputy Clerk

## MEMORANDUM AND ORDER TRANSFERRING VENUE[2]

### BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Before the Court is the Motion of Bank of America, N.A. ("Bank of America") to Transfer Venue to the United States Bankruptcy Court for the Northern District of Illinois (D.I. 106) (the "Venue Motion"), together with the Joinder of Brenda Helms, Chapter 7 Trustee (the "Chapter 7 Trustee") for the Estate of Pethinaidu Veluchamy and Parameswari Veluchamy, (the "Veluchamys") (D.I. #433) (the "Chapter 7 Trustee Joinder"). The following parties filed responses objecting to the Venue Motion:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Qualteq, Inc., d/b/a VCT New Jersey, Inc. (4600); (ii) 1400 Centre Circle, LLC (7091) ("1400 Centre Circle"); (iii) 5200 Thatcher, LLC (6991) ("5200 Thatcher"); (iv) 5300 Katrine, LLC (6016) ("5300 Katrine"); (v) Automated Presort, Inc. (0850) ("API"); (vi) Avadamma LLC (4775, 4810, 4810, 4829) ("Avadamma"); (vii) Creative Automation Company (4350) ("CAC"), (viii) Creative Investments, a General Partnership (5992) ("CIGP"), (ix) Fulfillment Xcellence, Inc. (3461) ("FXI"), (x) Global Card Services, Inc. (4581) ("GCS"), (xi) Unique Data Services, Inc. (1068) ("UDS"), (xii) Unique Embossing Services, Inc. (1043) ("UES"); (xiii) Unique Mailing Services, Inc. (2594) ("UMS"); (xiv) University Subscription Service, Inc. (3669) ("USS"); (xv) Versatile Card Technology, Inc. (5258) ("VCT"); (xvi) Veluchamy LLC (3434); (xvii) Vmark, Inc. (5904) ("Vmark"); and (xviii) ANAR Real Estate (9267) ("ANAR").

[2] This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. 157(b)(1) and (b)(2)(B).

(1) Response of Plami, S.A. de C.V. ("Plami") in Opposition to the Motion of Bank of America, N.A. to Transfer Venue of These Cases to the United States Bankruptcy Court for the Northern District of Illinois (D.I. #434) (the "Plami Response"),

(2) Objection of the Official Committee of Unsecured Creditors (the "Committee") to Motion of Bank of America, N.A. to Transfer Venue of These Cases to the United States Bankruptcy Court for the Northern District of Illinois (D.I. #434) (the "Committee Objection"),

(3) Debtors' Objection to Bank of America's Motion to Transfer Venue of the Chapter 11 Cases to the Northern District of Illinois (D.I. #436) (the "Debtor's Objection), and

(4) Joinder of Sterling National Bank ("Sterling") to the Debtors' Objection to Bank of America's Motion to Transfer Venue of the Chapter 11 Cases to the Northern District of Illinois (D.I. #437) (the "Sterling Joinder").

Bank of America, the Debtors, the Committee, the Chapter 7 Trustee and Plami (in part) submitted a Joint Pretrial Memorandum (D.I. #618) (the "Joint Pretrial Memorandum" or "JPM").

An evidentiary hearing was held and concluded on December 16, 2011 (the "Evidentiary Hearing").[3]

There exist some factual disputes among the parties, but the parties agree upon the applicable law. Of utmost significance, however, is that the undisputed facts, alone, lead the Court inexorably to the conclusion that both the interest of justice and the convenience of the parties compel transfer of venue of these jointly administered chapter 11 cases to the Northern District of Illinois.[4]

---

[3] On December 15, 2012, the Debtors filed the Debtors' Motion to Strike Statement from Bank of America, N.A.'s Trial Brief in Support of Venue Motion (the "Motion to Strike") (D.I. #629) and, on January 13, 2012, Bank of America filed the Motion of Bank of America to Supplement the Record in Connection with its Motion to Transfer Venue of these Cases to the United States Bankruptcy Court for the Northern District of Illinois ("Motion to Supplement the Record") (D.I. #682). Neither the relief requested in the Motion to Strike nor in the Motion to Supplement the Record is necessary or helpful to disposition of the Venue Motion and both will be denied.

[4] For reasons which will not be repeated here, but which were stated on the record on December 16, 2011, objections to Bank of America's standing to bring the Venue Motion were overruled. Hearing Transcript ("Tr.") at 5-16. The Debtors conceded that:
> For purposes of the Venue Motion only, the Debtors stipulate that Bank of
> America has alleged sufficient facts relating to fraudulent transfers made by the

2

## FACTS

The Court accepts and adopts as findings of fact the parties' Statement of Uncontested Facts (the "Agreed Facts") from Schedule A of the Joint Pretrial Memorandum (Agreed Facts Nos. 30 - 114). The most probative of the Agreed Facts ("AF") are set forth below:[5]

### Proximity of Creditors to Delaware versus Chicago

1. Qualteq[, Inc. d/b/a VCT New Jersey, Inc.] is incorporated in Delaware.[6] (AF ¶ 31).

2. Qualteq is the only Debtor incorporated in Delaware. (AF ¶56).

3. But for Qualteq's incorporation in Delaware, none of the bankruptcy cases of any other Debtor could have been filed in Delaware. (AF ¶32).

4. None of the creditors holding the 30 largest unsecured claims[8] against the Debtors are listed with Delaware addresses. (AF ¶34).

   [8]The parties disagree as to Bank of America's status as a creditor, so Bank of America is not included on Debtors' schedules. The references to percentages, the largest unsecured creditor, and the like in these facts are based on Debtors' schedules.

5. As shown on the Debtors' Amended Creditor Matrix, of a total number of 5,258 creditors, only 10 are listed with addresses in Delaware, while 2,394 (or approximately 45.5%) are listed with addresses in Illinois and the remaining (approximately 55.5% are listed with addresses outside of Illinois. (AF ¶35).

---

Veluchamys to give the Chapter 7 Trustee standing to appear and be heard in the Debtors' bankruptcy cases.
JPM, Sch. A, ¶29.

[5]I have rearranged the order of selected Agreed Facts to enhance exposition. The paragraph designation appearing in parentheses at the end of each cites the paragraph number set forth in the parties' Joint Pretrial Memorandum. At the Evidentiary Hearing, each party supplemented information which appears in the Debtors' Schedules. Nothing offered as evidence during the Evidentiary Hearing varies the Agreed Facts in any material way.

[6]It is undisputed that the Delaware venue for the Qualteq chapter 11 filing is appropriate. There were minor disputes by Bank of America about whether certain Qualteq affiliates could join the Delaware filing. These disputes were minor, and have no bearing on the outcome of the Venue Motion.

3

6. Of the 10 creditors originally listed on the Debtors' Amended Creditor Matrix with an address in Delaware, 1 creditor with a Delaware address (Thornley Company, Inc.) has been scheduled as holding a claim against any Debtor (Qualteq) in the aggregate amount of $6,525. (AF ¶36).

7. Based on the Debtors' Amended Schedules, 77% of the total amount of the Debtors' outstanding scheduled indebtedness is payable to creditors scheduled with addresses in Illinois. (AF ¶37).

8. Based on their Amended Schedules, the Debtors have disclosed $132.8 million in total debt, $103.1 million of which is owed to Illinois creditors. (AF ¶38).

9. Based on their Amended Schedules, the Debtors have disclosed $99.8 million in secured debt, $76.1 million of which is owed to Illinois creditors. Based on their Amended Schedules, the Debtors also have disclosed $34 million in unsecured debt, $26.9 million of which is owed to Illinois creditors. (AF ¶39).

10. Based on the Debtors' Amended Schedules, 31% of unsecured creditors have addresses outside of Illinois. (AF ¶40).

11. As shown on the Debtors' Consolidated List of Creditors Holding 30 Largest Unsecured Claims, 12 of the largest unsecured claims against the Debtors (approximately 40% in number and 29% in amount of those claims) are held by creditors listed with addresses in Illinois. Accordingly, 18 of the largest unsecured claims against the Debtors (approximately 60% in number and 71% in amount of those claims) are held by creditors listed with addresses outside of Illinois. (AF ¶41).

12. The Debtors' largest unsecured creditor is located in Naucalpa, Mexico. (AF ¶42).

13. Three of the Debtors' other top 30 creditors are located abroad (Singapore, Hong Kong and Canada), while additional creditors are located in various states other than Illinois – including Wisconsin, Michigan, North Carolina, Maryland, Texas, Missouri, Ohio, Iowa, New Jersey, and California. (AF ¶44).

14. The Debtors have creditors located in at least thirty-one states and two Canadian provinces, as well as in China, Mexico, Germany, India, Singapore, the United Kingdom, and Hong Kong. (AF ¶45).

15. As evidenced by the Monthly Fee Statements filed by EisnerAmper, LLP, as accountants and financial advisors to the Official Committee of Unsecured Creditors, for the period from August 29, 2011 through October 31, 2011, EisnerAmper professionals traveled an aggregate 49.7 hours to Chicago in order to review the Debtors' records and conduct 75 hours of on-site analysis regarding the Debtors' Chicago-based operations. During the same period,

EisnerAmper professionals spent 2 hours reviewing records and analyzing operations at Qualteq's New Jersey Facility (approximately 2.6% of all on-site work conducted). (AF ¶50).

16. Although the members of the Committee are geographically located closer to Chicago, Illinois than Wilmington, Delaware, the Committee opposes Bank of America's motion to transfer venue and wants venue to remain in Delaware. (AF ¶54).

### Location of the Debtors and their Assets

17. All of the Debtors except Qualteq are Illinois entities and are headquartered in Illinois. (AF ¶ 55).

18. All of the Debtors' books and records are located, kept and audited in Illinois, with the exception of Qualteq (whose books and records are maintained both in New Jersey and Illinois, but audited only in Illinois). (AF ¶80).

19. The Debtors operate nine domestic facilities, including seven in Illinois, one in Iowa, and one in New Jersey. None of the Debtors' businesses are operated out of facilities located in Delaware. (AF ¶61).

20. Based on the Debtors' Amended Schedules, 82% of the Debtors' assets (including real and personal property) are located in Illinois. None of the Debtors' assets are located in Delaware. (AF ¶62).

21. The Debtors employ approximately 1,370 people at their nine domestic facilities, of whom more than 1,250 (approximately 91%) work in Illinois. None of the Debtors' employees work in Delaware. (AF ¶63).

### Locations of the Debtors' Principals and Agents

22. The Veluchamys [Pethinaidu and Parameswari] and their adult children, Arun Veluchamy and Anu Veluchamy, are all residents of the State of Illinois. (AF ¶65).

23. Vmark [a debtor entity] owns 100% of the stock of API, CAC, FXI, GCS, UDS, UES, and VCT [all debtor entities]. VCT owns 100% of the stock of Qualteq. (AF ¶66).

24. Parameswari Veluchamy currently owns 48.4% of the stock of Vmark, Arun Veluchamy currently owns 25.8% of the stock of Vmark, and Anu Veluchamy currently owns 25.8% of the stock of Vmark. (AF ¶67).

25. ANAR [a debtor entity] is owned 50% by Arun Veluchamy and 50% by Anu Veluchamy.

5

(AF ¶ 68).

26. Pethinaidu Veluchamy, Parameswari Veluchamy, Arun Veluchamy, and Anu Veluchamy together presently own 100% of the stock of UMS [a debtor entity]. (AF ¶69).

27. Parameswari Veluchamy, Arun Veluchamy, and Anu Veluchamy together presently own 100% of the equity of Veluchamy LLC and CIGP [both debtor entities]. (AF ¶70).

28. Arun and Anu Veluchamy presently are the sole owners of ANAR and the sole beneficial owners of 1400 Centre Circle, 5200 Thatcher, and 5300 Katrine [all debtor entities]. (AF ¶71).

29. The Veluchamy 2009 Dynasty Trust is a trust established under Illinois law by Parameswari Veluchamy for the benefit of her descendants, the trustees of which are Pethinaidu Veluchamy and Arun and Anu Veluchamy. The Veluchamys and their children, Arun and Anu, together presently own 51% of Avadamma [a debtor entity], and the Veluchamy 2009 Dynasty Trust owns the rest. (AF ¶72).

30. Arun Veluchamy, has signed all of the Debtors' Petitions, First Day Declarations, Schedules, Statements of Financial Affairs and Monthly Operating Reports (including any amendments thereto). (AF ¶73).

31. All of the Debtors' officers and directors are residents of Illinois. (AF ¶74).

32. The CRO is the chief executive officer of Scouler & Co., which has offices in New York, Los Angeles, Atlanta, Cleveland, Chicago and Dallas, but not in Delaware. The CRO himself is based in Los Angeles, California. (AF ¶76).

33. As of November 18, 2011, the CRO had only been to New Jersey in connection with these cases once – on August 17, 2011, the day after the hearing on the first day motions – and the CRO and his team have been in New Jersey for a total of 3 - 4 days. Neither the CRO nor his team has been to API's Iowa facility. (AF ¶79).

### The Chicago Litigation

34. On December 29, 2010 Bank of America obtained two judgments against Pethinaidu and Parameswari Veluchamy in the United States District Court for the Northern District of Illinois totaling more than $43 million (the "Chicago Litigation"). (AF ¶1).[7]

---

[7] The parties submitted Agreed Facts ¶¶ 1 - 3 only in connection with the Debtors' challenge to the standing of Bank of America to transfer venue. Footnotes and exhibit references in those paragraphs have been omitted.

6

35. Bank of America commenced Post-Judgment Proceedings in the Chicago Litigation by serving and filing Citations to Discover Assets commencing on or about January 14, 2011 and continuing thereafter. As part of the Post-Judgment Proceedings, Bank of America served Citations to Discover Assets on the Veluchamys, their children Arun and Anu Veluchamy, on all of the Debtors (except Qualteq) and others. In addition, charging orders were entered against Avadamma on February 8, 2011, *nunc pro tunc* February 1, 2011. (AF ¶2).

36. The citations and charging orders referenced in the preceding paragraph 2 were in effect at the time the debtors made the transfers and payments that are the subject of [AF ¶¶ 7-15]. (AF ¶3).

37. Arun and Anu Veluchamy are citation respondents in the Chicago Litigation. (AF ¶89).

38. The Debtors are citation respondents in the Chicago Litigation. (AF ¶90).

39. Bank of America has offices and counsel in Wilmington, Delaware that are not involved in these bankruptcy cases or with any of the related proceedings in Illinois. (AF ¶85).

40. Bank of America is represented by Mayer Brown LLP, a law firm with large offices and hundreds of attorneys in New York and Washington, DC. The Mayer Brown LLP attorneys representing Bank of America in these cases, who have also been representing Bank of America in the related proceedings in Illinois since at least November, 2008, all are located in Chicago, Illinois. (AF ¶86).

41. Bank of America is headquartered in Charlotte, North Carolina. (AF ¶87).

42. Colin McClary, the Bank of America employee who has primary responsibility for the bank's loans to the Veluchamys and the related litigation is based in Chicago. (AF ¶88).

### [Veluchamys Bankruptcy] Proceeding Pending in Illinois

43. On August 16, 2011, the Veluchamys filed a chapter 7 petition in the U.S. Bankruptcy Court for the Northern District of Illinois, Case No. 2011-33413 (the "Veluchamy Bankruptcy"), which proceeding remains pending at the present time. . . . (AF ¶91).

44. Other than ANAR, 1400 Centre Circle, 5200 Thatcher, and 5300 Katrine, all of the Debtors are scheduled as creditors in the Veluchamy Bankruptcy (each holding a disputed, unsecured claim of an "unknown" amount), and, through their counsel, appeared at and are participating in the 341 meeting of creditors in the Veluchamy Bankruptcy. . . . (AF ¶92).

45. Arun Veluchamy and Anu Veluchamy are scheduled as unsecured creditors holding claims

7

of an "unknown" amount in the Veluchamy Bankruptcy, and they, together with their counsel, appeared at and are participating in the 341 meeting of creditors in the Veluchamy Bankruptcy. (AF ¶93).

46. The Veluchamys have scheduled "[a]lleged claims for fraudulent conveyance against Anu Veluchamy, Arun Veluchamy, VMark, Inc. and its affiliates" as an asset of the Veluchamy Bankruptcy estate. . . . (AF ¶95).

47. Vasudevaki Naidu [Parameswari Veluchamy's sister], Jaganath Naidu [Vasudevaki's husband] and Rajiv Parthasarathy [Parameswari's nephew] (altogether, the "Intervenors") filed suit against Mr. Veluchamy in Illinois state court, obtained agreed judgments, and then intervened in the Chicago Litigation. (AF ¶99).

48. The Debtors, Arun Veluchamy and Anu Veluchamy are not named as defendant [sic] in the Chicago Litigation; they are citation respondents in the Chicago Litigation. They have appeared and participated in the Chicago Litigation and are represented by Chicago counsel. (AF ¶100).

49. For some or all of the Chicago Litigation, the Veluchamys, their children Arun and Anu, and the Intervenors have been represented by counsel located in Chicago. (AF ¶101).

## Additional Proceedings Pending in Chicago

50. Since at least October 2009, there has been an ongoing FDIC investigation in Chicago relating to the failure of Mutual Bank in Harvey, Illinois. The Veluchamy family members were shareholders of Mutual Bank. (AF ¶104).

51. The FDIC intervened in the Chicago Litigation. . . . (AF ¶105).

52. On October 25, 2011, the FDIC sued Arun and Anu Veluchamy, among other directors of Mutual Bank, in the United States District Court for the Northern District of Illinois. (AF ¶106).

53. In the course of the Post-Judgment Proceedings, the judge twice referred matters involving the Veluchamys to the U.S. Attorney's Office in Chicago for its review of potential criminal conduct by members of the Veluchamy family. (AF ¶107).

8

## DISCUSSION

The parties frame the legal issue before the Court thusly:

***Whether these bankruptcy cases should be transferred from Delaware to the Northern District of Illinois.*** Under 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014(a), this Court may transfer the cases if transfer is "in the interest of justice or for the convenience of the parties." In making this determination, courts weigh six primary factors: (a) proximity of creditors of every kind to the court; (b) proximity of the debtor; (c) proximity of witnesses who are necessary to the administration of the estate; (d) the location of the debtor's assets; (e) the economic administration of the estate; and (f) the necessity for ancillary administration in the event of liquidation. *See, e.g., In re Innovative Commc'n Co.,* 358 B.R. 120, 126 (Bankr. D. Del. 2006); *In re Garden Manor Assocs., LP,* 99 B.R. 551, 553 (Bankr. S.D.N.Y. [1988]). This Court also has discretion to consider other private and public interest factors. *See Innovative,* 358 B.R. at 126-27. Bank of America, as the movant, and the Chapter 7 Trustee, by virtue of her joinder, have the burden of demonstrating that transfer is warranted based on the preponderance of the evidence.

JPM at 1.

"It has been observed that §1412 is . . . written in the disjunctive, making transfer of venue appropriate *either* in the interest of justice *or* for the convenience of the parties, and that this statutory provision creates two distinct analytical bases upon which transfer of venue may be grounded." *In re LaGuardia Assoc.,* 316 B.R. 832, 837 (Bankr.E.D.Pa. 2004) citing *In re Pinehaven Assoc.,* 132 B.R. 982, 989-90 (Bankr.E.D.N.Y. 1991). Consideration of both is appropriate here.

The parties have spent much time and effort wading deeply through the thicket of the well-worn "six-factor" test.[8] Needlessly so. The Agreed Facts, alone, reveal that no factor weighs in favor of the Debtors and all, to one degree or another, weigh in favor of Bank of America and the Chapter 7 Trustee. Debtors' lead (although not litigation) counsel is located in Chicago. I accord

---

[8]Courts rely on the six factors cited by the parties, above, in deciding whether to transfer venue for the convenience of the parties. *LaGuardia,* 316 B.R. at 837. *See also Puerto Rico v. Commonwealth Oil Refining Co. (Matter of Commonwealth Oil Refining Co.),* 596 F.2d 1239, 1247 (5th Cir. 1979) (better known as "*CORCO*").

9

little weight to the argument that other estate professionals, located in Delaware, Pennsylvania, New York, and New Jersey, have invested themselves here. (*See* Agreed Facts, ¶¶ 46 - 52). Transfer of venue is appropriate for the convenience of the parties.

It is oft-repeated that the factor accorded the most weight is promotion of the economic and efficient administration of the estate. *CORCO,* 569 F.2d at 1247. The great weight for administration of these related chapter 11 cases lies in Chicago, Illinois, not only in the management and economic administration of the estate, but in the related proceedings described above. The same considerations arise in applying the "interest of justice" prong of the statutory standard, which has been described ably by Judge Gonzalez in *Enron*:

> The interest of justice prong is a broad and flexible standard that is applied based on the facts and circumstances of each case. In evaluating the interest of justice, the Court must consider what will promote the efficient administration of the estate, judicial economy, timeliness and fairness.

*In re Enron Corp.*, 274 B.R. 327, 349 (Bankr. S.D.N.Y. 2002) citing *In re Manville Forest Products Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990).

Importantly, the Debtor has not yet reached a hearing on the adequacy of its disclosure statement. On January 18, 2012, the Debtors filed a Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for the Amended Joint Plan of Reorganization of Qualteq, Inc. And Affiliated Debtors in Possession (D.I. #699) and a Motion of Debtors for an Order Approving (1) the Disclosure Statement with Respect to the Debtors' Amended Joint Plan of Reorganization (II) the Notice of Disclosure Statement Hearing (III) Procedures for the Solicitation of Votes on the Plan (IV) Form of Notice Relating to the Plan (V) Forms of Ballots for Submitting Votes on the Plan and (VI) Certain Related Relief (D.I. #713). A hearing on these motions is currently scheduled for

10

March 27, 2012. Case activity until now - - apart from the constant carping between the Debtors and Bank of America - - has been limited to routine matters, such as use of cash collateral, retention of estate professionals, maintenance of insurance coverage and the like.

The Debtors accuse Bank of America of attempting to drag them directly back into the fray now pending in the District Court and Bankruptcy Court in Chicago. Bank of America responds that the Debtors' filing in this Court was intended as an attempted escape from the clutches of the federal courts in Chicago. Both are certainly correct.

The Debtors' Chief Restructuring Officer, Daniel Scouler, testified that Delaware was chosen as a forum for these chapter 11 filings for three reasons: (1) predictability of process, (2) familiarity of the Court with business issues, and (3) the desire to create distance between the Debtors' operations and the ongoing lawsuits in Chicago. (Tr. at 50-51; 76- 79). But it is equally clear that the Debtors wish to remain in Delaware for the same three reasons.

I reject categorically the notion that any practice or experience of this Court serves as a basis under these circumstances to resist a motion for the transfer of venue.[9] Indeed, Mr. Scouler testified on cross examination:

> Q. Now, one of the things you've said is that you believe that the debtors' bankruptcies are complex, right?
>
> A. Yes.
>
> Q. But, in fact, you don't know any reason why a Chicago Bankruptcy Court couldn't deal with a complex bankruptcy, right?
>
> A. I don't.

---

[9] I truly cannot conceive of a circumstance in which this should be relevant.

11

> Q. And you also don't have any reason to believe that the Reorganization Plan that you're working on is more or less likely to be approved here than in Chicago, right?
>
> A. That's a fair statement.

*Id.* at 127.

I agree with the Debtors' CRO that there is no reason why a Chicago bankruptcy court could not "deal with a complex bankruptcy." Furthermore, the Debtors' obvious attempt to "escape" the forum best suited for administration of these chapter 11 cases should not be condoned.

## CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that the Venue Motion (D.I. 106) is **GRANTED** and venue of the following eighteen jointly administered bankruptcy cases is hereby transferred to the District Court for the Northern District of Illinois:

(1) Qualteq, Inc. d/b/a VCT New Jersey, Inc., Case No. 11-12572

(2) 1400 Centre Circle, LLC, Case No. 11-12573

(3) 5200 Thatcher, LLC, 11-12574

(4) 5300 Katrine, LLC, Case No. 11-12575

(5) Automated Presort, Inc., Case No. 11-12576

(6) Avadamma LLC, Case No. 11-12577

(7) Creative Automation Company, Case No. 11-12578

(8) Creative Investments, A General Partnership, Case No. 11-12579

(9) Fulfillment Xcellence, Inc., Case No. 11-12580

(10) Global Card Services, Inc., Case No. 11-12581

 (11) Unique Data Services, Inc., Case No. 11-12582

 (12) Unique Embossing Services, Inc., Case No. 11-12583

 (13) Unique Mailing Services, Inc., Case No. 11-12584

 (14) University Subscription Service, Inc., Case No. 11-12585

 (15) Versatile Card Technology, Inc., Case No. 11-12586

 (16) Veluchamy, LLC, Case No. 11-12587

 (17) VMARK, Inc., Case No. 11-12588

 (18) ANAR Real Estate, LLC, Case No. 11-12860

The Clerk of the Bankruptcy Court for the District of Delaware shall transfer promptly the case files and records to the District Court for the Northern District of Illinois.

And, for the reasons stated above, it is further **ORDERED** that the Motion to Strike (D.I. 629) and the Motion to Supplement the Record (D.I. 682) are **DENIED**.

    BY THE COURT:

    _____
    KEVIN J. CAREY
    UNITED STATES BANKRUPTCY JUDGE

Dated: February 16, 2012

cc: Carl D. Neff, Esquire[10]

---

[10]Counsel shall serve a copy of this Memorandum and Order upon all interested parties and file a Certificate of Service with the Court.

13